**ORIGINAL**

**United States District Court For**

**Middle District of Pennsylvania**

| | |
|---|---|
| James E. Foster, | Case No. **CV-03-2088** |
| 1577 Little Egypt Road, | FILED |
| Harriosnville, Pa. 17228, | HARRISBURG, PA |
| Plaintiff, | JAN 0 4 2005 |
| Vs | MARY E. D'ANDREA, CLERK |
| JLG Industries Inc. | Per _____ Deputy Clerk |
| 1 JLG Drive | Defamation |
| McConnellsburg, PA. 17233 | Pennsylvania Human Relations Act 43 P.S. §§ 951-963 |
| Defendants | |
| Mr. Samuel Swope, V.P. | Title VII Civil Rights Act Of 1964 |
| Human Resources, JLG | |
| Ms. Jeanne Wakefield, | |
| Human Resources, JLG | |
| Mr. Eugene Swope, Manager JLG | |
| Mr. Duane Souders, Manager JLG | |
| Mr. Clifford B. Geiger | |
| 20 South Charles Street | |
| Baltimore, Maryland 21201-3225 | Honorable Judge RAMBO |
| Codefendants | |
| | Jury Trial Demanded |

1

## AMENDED COMPLAINT PER COURT ORDER
## DATED DECEMBER 21, 2004

1. On March 18th, 2002, the Plaintiff filed a complaint with the Pennsylvania Human Relations Commission (PHRC) for retaliation, discrimination and blocking employment, Case # 200202088. Defendants responded to the complaint on March 21, 2003 by resubmitting information used on March 7th, 1997 in a Pennsylvania Unemployment Hearing. Where several documents used had complete section black out, when asked by Ms. S. R. Gran, UC Referee, what good is this? Defendants responded it would be detrimental to the company's position. Ms. Gran ruled for the Plaintiff that company had no facts to support their position. (See Exhibits 1a submitted at hearing), (Exhibit 1b submitted to PRHC). (Exhibit 1c submitted at hearing), (Exhibit 1d was submitted to PHRC).

2. Plaintiff alleges co-defendants cover-up the true facts that the female manager had been written up and removed from her position, and ordered to resign or be transferred, knowing she would seek revenge against Plaintiff until management could build a case against Ms. Foster. (See Case File of Documents forwarded to Mr. Jamison of PHRD for the scheduled Findings Conference).

3. Plaintiff alleges these documents were then altered and resubmitted in March 21, 2003 to Pennsylvania Human Relations Commission as factual documents with derogatory, slanderous and false statement in an effort to influence a State Investigating Authority in its decision-making process. (See Case File Submitted by JLG Industries, Inc.).

4. Plaintiff alleges that since Mr. Clifford Geiger was the attorney of record would have been aware of documents contained blackout sections and discounted by Mr. Gran. Letter dated March 21, 2003 from Mr. Clifford Geiger to Mr. Jamison investigator Pennsylvania Human Relations Commission clearly indicates JLG would not be in a position to recommend Mr. Foster for a position. Defendant responded to the complaint with the same material submitted from 1996 & 1997 in the original case to support their position on Case 2 filed in March 2002.) See Case File submitted by JLG Industries, Inc.

5. Plaintiff alleges information give to Mr. Edwin Schwarts Esq. attorney submitted in a motion on March 10th 2004 to the court on another case, that Plaintiff had been fired

3

for "Stalking" a female co-worker by JLG Industries, could have only come from some one of authority with Human Resources Department of JLG Industries. (See Exhibit 2).

6. On July 28th, 2004 in a Hearing conduct by Administrative Law Judge Honorable Mr. Edward T. Morriss, informed me that JLG Industries had fired me for Sexual Harassment, JLG Human Resources Department could have only supplied this information. (See Exhibit 3)

## **RELIEF**

1. DAMAGES: Plaintiff has suffered intentional emotional mental and physical stress that will require long term care. Plaintiff has been diagnosed with serve chronic mental depression and has been classified by the Federal Government as total disable and unable to fully enjoy life, as one would know it.

   - JLG INDUSTRIES, INC. $10,000,000.00
   - Codefendants: $500,000.00. Each.

2. **PUNITIVE DAMAGES**: To be established by the Jury.

3. **TORT:** To be established by the Jury.

4. **REMEDY:** Only a Jury Trial is demanded

```
 1
 2
 3
 4
 5
 6                           Dated this January 3, 2005
 7
 8                                        _____
 9                                        James E. Foster
                                          1577 Little Egypt
10                                        Rd.
                                          Harrisonville, Pa.
11                                        17228
12                                                 None
13                           A True copy
                               ATTEST:
14
                             By_____
15
                             Clerk Of the Court
16                           U.S. District Court
                             Middle District of Pennsylvania
17
18
19
20
21
22
23
24
25
```

**ORIGINAL**

# UNITED STATE DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

P.O. Box 868
Harrisburg, PA. 17108-0868

Date: January 4, 2005

**FILED**
HARRISBURG, PA
JAN 04 2005
MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

Deputy Clerk of the Court
Mr. Mark J. Armbruster
U.S. District Court

RE: Foster v. JLG Industries, Inc.
NO: 03-CV-2088

Dear Mr. Armbruster

   Enclosed for filing is a titled document  "Amended Complaint"

Pre Court Order dated December 21, 2004 and supporting facts.


Thank you for your time and effort




Respectfully Submitted

James E. Foster
1577 Little Egypt Rd.
Harrisonville, PA. 17228


cc: The Honorable Ms. SYLVIA RAMBO
    United States District Court Judge





# Interoffice Memo

DATE: January 6, 1997

MEMO TO: File

FROM: Jeanne Wakefield

SUBJECT: Telephone conversation with Colleen Anderson

Colleen called at approximately 11:30 am and relayed the following:

Colleen was away for the weekend and returned home to find a phone message from Jim Foster. The message indicated that Jim had a package for her, and that it was in his truck and that he'd be at the legion.

Jim has made several attempts to contact Colleen. While she was off work on medical leave in November Jim came to her house late one evening. Jim appeared drunk and was pounding on her door. Colleen let him in thinking she could calm him down. Colleen indicated that during their conversation Jim said he should "just rape her now to get her off his mind"

Colleen has considered a restraining order, but has taken no action.

Colleen is afraid of what Jim might do if JLG takes action in light of the disciplinary warning of September 9, 1996. Colleen is afraid that if we fire Jim he will blame her.

I told her I would let her know what action we plan to take.

1:30 pm Discussed with Pete saucier, Sam Swope present.





# Interoffice Memo

DATE: January 6, 1997

MEMO TO: File

FROM: Jeanne Wakefield

SUBJECT: Telephone conversation with Colleen Anderson

Colleen called at approximately 11:30 am and relayed the following:

Colleen was away for the weekend and returned home to find a phone message from Jim Foster. The message indicated that Jim had a package for her, and that it was in his truck and that he'd be at the legion

Jim has made several attempts to contact Colleen. While she was off work on medical leave in November Jim came to her house late one evening. Jim appeared drunk and was pounding on her door. Colleen let him in thinking she could calm him down. Colleen indicated that during their conversation Jim said he should "just rape her now to get her off his mind"

Colleen has considered a restraining order, but has taken no action.

Colleen is afraid of what Jim might do if JLG takes action in light of the disciplinary warning of September 9, 1996. Colleen is afraid that if we fire Jim he will blame her.

I told her I would let her know what action we plan to take.


1:30 pm Discussed with Pete saucier, Sam Swope present.

Pete suggested that we call Jim in, indicate that we know he has contacted (unwelcomed) Colleeen and that as a result we could take action to fire him. We should tell Jim that Colleen does not want us to fire him, but she does want him to leave her alone. She wants no contact from him.

Later asked Pete if we could take further action against Jim after Colleen resigns. Pete indicated that the warning stands regardless of Colleens employment status.

EXHIBIT 6

1b

*not admitted*



# Interoffice Memo

MEMO:     To File

FROM:     Gary Schweitzer

DATE:     January 24, 1997

SUBJECT:  Jim Foster

I phoned Jim Foster on Monday morning, January 20, to tell him that the decision had been made to terminate his employment with JLG Industries. I further told him that we would continue his pay through February and that I was preparing a letter of release for him to review and sign. He said that he would like to pick this letter up at the gate. I told him I would call him to arrange this after the letter had been prepared and approved.



The next morning, January 21, I phoned Foster to tell him that we would not be giving him a release letter to sign, but that we would like him to give us a letter of resignation. He said he would like to have until Friday to decide. I agreed.

On Thursday, January 23, we received a letter from an attorney representing Foster which said, in part, that Foster would not provide a letter of resignation. We made a decision ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ to pay Foster through the date of his attorney's letter, January 21, and to end his benefits on the same date. I phoned Foster to inform him of this. He was not home but returned my call this morning. I related the information to Foster. He then told me that he had written me a letter which I should receive on Monday, January 27, which includes a page from the JLG Handbook addressing suspensions.

 **Interoffice Memo**

**MEMO:** To File

**FROM:** Gary Schweitzer

**DATE:** January 24, 1997

**SUBJECT:** Jim Foster

I phoned Jim Foster on Monday morning, January 20, to tell him that the decision had been made to terminate his employment with JLG Industries. I further told him that we would continue his pay through February and that I was preparing a letter of release for him to review and sign. He said that he would like to pick this letter up at the gate. I told him I would call him to arrange this after the letter had been prepared and approved.

The next morning, January 21, I phoned Foster to tell him that we would not be giving him a release letter to sign, but that we would like him to give us a letter of resignation. He said he would like to have until Friday to decide. I agreed.

On Thursday, January 23, we received a letter from an attorney representing Foster which said, in part, that Foster would not provide a letter of resignation. We made a decision in consultation with Tom Singer, Corporate Counsel, to pay Foster through the date of his attorney's letter, January 21, and to end his benefits on the same date. I phoned Foster to inform him of this. He was not home but returned my call this morning. I related the information to Foster. He then told me that he had written me a letter which I should receive on Monday, January 27, which includes a page from the JLG Handbook addressing suspensions.

Section), Labor and Industry of Pennsylvania, Career Links of Pennsylvania, Pennsylvania Legal Service, and the Law Firm of Korsak & DeArment as Defendants. On December 12, 2003, Defendant Korsak, as the Law Firm of Korsak & DeArment, filed a Motion to Dismiss Plaintiff's Complaint pursuant to F.R.C.P. 12(b), together with a brief in support thereof.

On February 23, 2004, the Honorable Judge Christopher C. Conner entered an Order granting in part and denying in part Defendant's Motion to Dismiss. A true and correct copy of Judge Conner's Order and Memorandum are attached hereto and made a part hereof as Exhibit "A". Judge Conner granted Plaintiff twenty (20) days to file an Amended Complaint.

On or about March 8, 2004, Plaintiff filed his Amended Complaint.

## II.     STATEMENT OF FACTS

Defendant Korsak represented Plaintiff in an unemployment compensation matter in early 1997 and a subsequent action before the Pennsylvania Human Relations Commission in 1998-99. The underlying facts regarding the unemployment compensation and PHRC actions relate to Plaintiff's discharge from his employment due to Plaintiff's "stalking" a female co-worker. Defendant was successful in obtaining unemployment compensation benefits for Plaintiff and subsequent to the denial of the PHRC action, Plaintiff discharged Defendant Korsak as his counsel. This termination in representation occurred, at the latest, on January 12, 2000 following Plaintiff's request for Defendant Korsak to transfer his case file to other counsel.

Plaintiff did subsequently contact Defendant Korsak, *via* telephone, regarding the possible commencement of a civil action against the Pennsylvania Human Relations Commission, the Pennsylvania Attorney General's Office, the Pennsylvania Dept. of Labor &

Ex 2

 **SOCIAL SECURITY ADMINISTRATION**

Refer To:
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
JAMES E. FOSTER

Office of Hearings and Appeals
2 N. Second Street
8th Floor
Harrisburg, PA 17101
Tel: (717) 782-3815 / Fax: (717) 236-3150

July 1, 2004

JAMES E. FOSTER
1577 LITTLE EGYPT RD
HARRISONVILLE, PA 17228

## NOTICE OF HEARING

I have scheduled your hearing for:

**Day:** Wednesday    **Date:** July 28, 2004    **Time:** 12:15 PM

**Room:**    **Address:** Days Inn
865 York Road   Rt. 30 East
Gettysburg, PA 17325

### It Is Important That You Come To Your Hearing

I have set aside this time to hear your case. If you do not appear at the hearing and I do not find that you have good cause for failing to appear, I may **dismiss** your request for hearing. I may do so without giving you further notice.

### Complete The Enclosed Form

Please complete and return the enclosed acknowledgment form to let me know you received this notice. Use the enclosed envelope to return the form to me within 5 days of the date you receive this notice. We assume you got this notice 5 days after the date on it unless you show us that you did not get it within the 5-day period.

See Next Page

Ex 3